72909. DEPARTMENT OF TRANSPORTATION v. ARAPAHO
CONSTRUCTION, INC.
(349 SE2d 196)

SOGNIER, Judge.

Arapaho Construction, Inc. (Arapaho) brought this action against the State Department of Transportation (DOT) seeking damages for breach of contract. The trial court, sitting without a jury, found in favor of Arapaho. DOT appeals.

Appellee was the bridge contractor for appellant on the highway project known as the Presidential Parkway. Some of the recent history of the Parkway may be found in *Dept. of Transp. v. Brooks*, 254 Ga. 303 (328 SE2d 705) (1985) (*Brooks*) and *Dept. of Transp. v: City of Atlanta*, 255 Ga. 124 (335 SE2d 114) (1985) (*DOT v. Atlanta*). Briefly, the Parkway was planned to traverse portions of four parks owned by the City of Atlanta. Construction of the Parkway began in December 1984. In February 1985, the Fulton County Superior Court in *Brooks* issued an injunction barring some construction on the Parkway. On appeal in that case, on April 23, 1985, the Supreme Court held that a deed transferring portions of the four parks from the City to appellant was void because of a conflict of interest of one of the Atlanta City Council members. *Brooks*, 254 Ga. at 317. Thereafter, on May 20, 1985, the Atlanta City Council passed an ordinance signed into law on June 3, 1985, authorizing a second transfer to appellant of portions of the four parks with certain restrictions. Subsequently, appellant filed a petition in the Superior Court of DeKalb County seeking to condemn any interest the City might have retained in the portions of the parks deeded to appellant. The trial court granted the motion to intervene made by certain individual taxpayers who filed suit, naming appellee and appellant as defendants, to void

the land transfer from the City to appellant and to enjoin any further construction on the Parkway. On September 4, 1985, the trial court dismissed the condemnation petition and permanently enjoined construction on the Parkway. On September 19, 1985, appellee filed its complaint in this action alleging that appellant breached the contract between the parties by failing to provide the right-of-way necessary prior to construction of the bridges. On October 8, 1985, the Supreme Court in *DOT v. Atlanta* upheld the injunction of construction on the Parkway as it applied to the park lands, holding that while appellant had the power to condemn the city property, that power had not been implemented by legislation establishing a procedure for such a condemnation. 255 Ga. at 130-135 (3). On November 5, 1985, the Supreme Court denied appellant's motion for rehearing in *DOT v. Atlanta* and on the same date appellant terminated its contract with appellee.

1. Appellant contends the trial court erred by holding that because appellant breached its contract with appellee (a fact appellant does not dispute), appellant could not limit its liability for damages in accordance with the termination provision of the contract. The termination provision of the contract states, in pertinent part: "A. General: [Appellant] may, by written notice, terminate the Contract or a portion thereof when [appellee] is prevented from proceeding with the Contract as [a] direct result of one of the following conditions: . . . 3. An injunction is imposed by a court of competent jurisdiction which stops [appellee] from proceeding with The Work and causes a delay of such duration that it is in the Public Interest to terminate the Contract and [appellee] was not at fault in creating the condition which led to the court's injunction. The decision of the Engineer as to what is in the Public Interest and as to [appellee's] fault, for the purpose of Termination, shall be final. . . . B. Implementation: When, under any of the above conditions, the Contract, or any portion thereof, is terminated before completion of all Items of work in the Contract, payment will be made for the actual number of Units or Items of work completed at the Contract Unit Price, or as mutually agreed for Items of work partially completed or not started. No claim for loss of anticipated profits shall be considered. Reimbursement for organization of The Work and moving equipment to and from the job will be considered where the volume of work completed is too small to compensate [appellee] for these expenses under the Contract Unit Prices. However, the Engineer's decision as whether or not to reimburse for organization of The Work and moving equipment to and from the job, and in what amount, shall be final."

The trial court held that the termination provision could not be construed to apply in this case where appellant had breached the contract. The court held that application of the termination provision

would result in enforcement of the provision as an exculpatory clause and that the termination provision does not meet the strict requirements for enforceability of such a clause. We agree. "[E]xculpatory clauses must be clear and unambiguous, they must be specific in what they purport to cover, and any ambiguity will be construed against the drafter of the instrument. [Cits.] The reason why exculpatory clauses should be explicit, prominent, clear and unambiguous, is that such an agreement amounts to a waiver of substantial rights, could be an accord and satisfaction of possible future claims, and requires a meeting of the minds on the subject matter. [Cit.]" *Hall v. Skate Escape,* 171 Ga. App. 178, 180-181 (319 SE2d 67) (1984).

We find no merit in appellant's argument that the above provision is *not* an exculpatory clause. A reading of the termination provision reveals that it would act as a release for appellant in regard to *any* breach of contract situation with the result that appellant would not be liable for the full scope of common law damages upon breach. Thus, we agree with the trial court that under the circumstances in this case, the termination provision constituted an exculpatory clause. See generally *R. S. Helms v. GST Dev. Co.,* 135 Ga. App. 845, 848 (219 SE2d 458) (1975). We further agree with the trial court that the termination provision, as an exculpatory clause, cannot be enforced. Appellant, as drafter of the contract, failed to incorporate any language in the termination provision explicitly referencing its application to breach of contract cases. Rather, the provision refers solely to court-imposed injunctions. The termination provision is, therefore, not sufficiently unambiguous to be construed to require a waiver of appellee's rights to the full extent of its damages on appellant's breach of the contract, *Hall*, supra, and the trial court, accordingly, did not err by refusing to enforce it.

We find no merit in appellant's argument that the trial court's construction of the contract renders the termination provision "meaningless." The trial court's construction merely invalidates the termination provision in instances involving appellant's breach of the contract because in such instances the termination provision constitutes an unenforceable exculpatory clause. For example, the termination provision would be valid and would have been applied in any instance where an injunction had been imposed for any of several reasons *not* the result of a breach of contract on appellant's part, which prevented appellee from performing its duties under the contract. (At least one possible example would be where an injunction was imposed as a result of action by one of the other parties involved in the Parkway construction.) Nor do we find merit in appellant's argument, raised for the first time on appeal, that its breach of the contract by failing to provide the required rights-of-way was only a partial breach and that appellee's damages should be limited accordingly. The evidence

amply supports the trial court's finding that the breach was a material one, totally preventing appellee from performing under the contract. See generally OCGA § 9-11-52 (a); *Davis v. Hosp. Auth. of Fulton County*, 167 Ga. App. 304, 305 (306 SE2d 306) (1983); OCGA § 13-6-2. Likewise, the trial court correctly held that appellee is not barred by the termination provision from recovering the full measure of its damages for that breach, including its actual costs to the date of the breach as well as its loss of profits it would have realized in the event of complete performance. See generally *Marathon Oil v. Hollis*, 167 Ga. App. 48, 51 (2) (305 SE2d 864) (1983).

2. Appellant contends the trial court erred by failing to limit the award in favor of appellee for appellee's direct costs for demobilization (i.e., the cost of moving equipment from the job) as provided by the termination clause of the contract. However, because the termination provision is not applicable where there has been a breach of contract by appellant, see Division 1, appellant cannot invoke the language of the termination provision here to insulate itself from full liability for its breach. See *Hall*, supra. The trial court awarded appellee $51,073 in demobilization costs based on the testimony of Dominic Galano, appellee's chairman and CEO. Since the trial court's finding on which its award for demobilization costs is based is supported by some evidence, it will not be disturbed on appeal. OCGA § 9-11-52 (a). *Davis*, supra.

3. Appellant's enumerations 3, 5 and 6 concern the sufficiency of the evidence to support certain findings of the trial court. Our standard of review of the trial court's findings of fact is the "clearly erroneous" test which is the same as the "any evidence" rule. *Allen v. Cobb Heating &c. Co.*, 158 Ga. App. 209, 210 (279 SE2d 505) (1981). Thus, we will not disturb the findings of the trial court if there is any evidence to sustain them. Id.

(a) Appellant contends the trial court's award to appellee of $500,000 for lost profits, the full amount of appellee's claim for that item, is not supported by the evidence. At trial, appellee's president, Walter Reichart, testified in detail regarding his calculation of the $500,000 profit appellee expected to make on the contract, which was based on a percentage above its total anticipated costs on the project. Thus, his calculation reflected a deduction of appellee's costs to complete the project and constituted some evidence on which the trial court could base its award. Appellant's next argument, that the trial court improperly excluded appellee's overhead expenses, is without merit because appellee's evidence shows that its calculation of lost profits included all items of overhead specifically attributable to the Parkway project. Appellant's remaining arguments concerning lost profits have been carefully considered and found to be without merit.

(b) Testimony by appellee's chairman, Galano, supports the trial

court's award for equipment rentals and, therefore, appellant's arguments concerning the crane used on the project and various other items are without merit.

(c) Appellant next contends that the trial court erred by applying a formula submitted by appellee's witness which calculated rental rates for appellee's equipment costs at 80% of "Blue Book" rates rather than a formula supplied by appellant. The record shows that the formula proposed by appellant was applicable only to temporary delays during "forced work" and thus was inapplicable here. Therefore, the trial court's finding as to the rental rate of appellee's equipment is supported by the evidence.

4. Appellant contends the trial court erred as a matter of law by including in its award to appellee in this case the attorney fees appellee incurred in litigating *DOT v. Atlanta*. The trial court found that these fees were consequential damages incurred as a direct result of appellant's failure to provide the rights-of-way as required by the contract between the parties. Consequential damages are recoverable only if they can be traced solely to the breach of the contract or unless they are capable of exact computation, and are independent of any collateral enterprise entered into in contemplation of the contract. OCGA § 13-6-8. We agree with the trial court that appellee's fees for its legal defense in *DOT v. Atlanta* directly resulted from appellant's breach of the contract and thus the trial court's award to appellee for these expenses was not erroneous. OCGA § 13-6-8. See also *Williams v. Struble*, 162 Ga. App. 196 (1) (290 SE2d 538) (1982); *Alterman Foods v. G. C. C. Beverages*, 168 Ga. App. 921 (310 SE2d 755) (1983).

5. Appellant contends the trial court erred by awarding various consequential damages to appellee, namely, sums for interest paid on loans to obtain working capital; fees for required insurance floaters on equipment used as collateral for the loans; and fees paid by appellee to its attorneys for their services in connection with the loans. Appellee argues that these sums flowed directly from appellant's breach of the contract because appellant's failure to provide the rights-of-way prevented appellee from earning money, which in turn prevented appellee from obtaining bonding for other work, with the end result that appellee had to procure these loans for working capital in order to sustain its business. However, the record reflects that the loans were taken out from the very beginning of the project; that appellee was prevented from maintaining its cash flow by a number of different events, including injunctions imposed against another contractor involved in the Parkway project; and that the special insurance floater was required not because of any acts by appellant, but because of vandalism and acts of Parkway protesters. Thus, we agree with appellant that these items cannot be traced solely to appellant's breach of

the contract and the trial court erred by awarding these sums as consequential damages. OCGA § 13-6-8. See also *Quigley v. Jones*, 255 Ga. 33 (334 SE2d 664) (1985).

6. Lastly, appellant contends the trial court erred by awarding appellee its attorney fees in this case. Expenses of litigation in contract actions are recoverable only where the defendant has acted in bad faith in making the contract, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense. OCGA § 13-6-11; *Marler v. River-Creek Assoc.*, 138 Ga. App. 471, 474 (4) (226 SE2d 311) (1976). The trial court found that appellant acted in bad faith, was stubbornly litigious and caused appellee unnecessary trouble and expense because appellant waited until after the Supreme Court ruled on its appeal in the case of *DOT v. Atlanta* before attempting to terminate its contract with appellee or otherwise attempting to renegotiate the contract terms to mitigate the potential damage to appellee. The trial court found that appellant knew or should have known that the argument of the plaintiffs in *DOT v. Atlanta* would probably prevail. However, it is apparent from a review of the record in this case and the opinion in *DOT v. Atlanta* that the Supreme Court's holding in that case, that appellant was not then authorized to condemn public property, was by no means probable. Indeed, we note that three justices dissented from that holding. Thus, the trial court's finding in support of this award is not supported by the evidence and because there is no other evidence to authorize such an award, the award for appellee's expenses of litigation in this action was improper. *Marler*, supra at 474.

Accordingly, the judgment on the trial court's findings of fact and conclusions of law will be affirmed on condition that appellee, at the time the remittitur from this court is made the judgment of the trial court, writes off from that judgment the amounts awarded for interest on the loans obtained, the insurance and legal services in connection with the loans, and appellee's costs of litigation in this case. Otherwise, the judgment is reversed. Id.

*Judgment affirmed on condition. Banke, C. J., and Birdsong, P. J., concur.*

DECIDED SEPTEMBER 2, 1986 —
REHEARING DENIED SEPTEMBER 18, 1986

*Michael J. Bowers, Attorney General, Marion O. Gordon, First Assistant Attorney General, Roland F. Matson, Senior Assistant Attorney General, Charles M. Richards, Assistant Attorney General,* for appellant.

*Michael R. Johnson*, for appellee.