## A93A1283. HIXSON-HOPKINS AUTOPLEX, INC. v. CUSTOM COACHES, INC.
### (432 SE2d 224)

BLACKBURN, Judge.

This is a suit on account in which the appellee Custom Coaches sought damages resulting from appellant Hixson-Hopkins Autoplex, Inc.'s (Autoplex) failure to pay for the purchase of six customized vans from Custom Coaches. Autoplex denied the existence of a contract to purchase the six vans and counterclaimed for damages arising out of Custom Coaches' alleged breach of a different, but related, contract for the purchase of vans by Custom Coaches. The jury returned a verdict in favor of Custom Coaches for $33,330 as actual damages for breach of contract, $2,184.11 as interest, $5,000 as expenses of litigation, and $36,670 as consequential damages. Autoplex's motions for directed verdict, judgment n.o.v., and new trial were denied, and Autoplex appeals.

1. In its first enumeration of error Autoplex asserts that the trial court erred in failing to grant its motion for directed verdict at the close of plaintiff's evidence. Autoplex argues that Custom Coaches did not establish an agreement to purchase the six custom vans, and that Custom Coaches' claim for consequential damages was too remote and incapable of computation without speculation and conjecture.

"In Georgia, the standard used to review the grant or denial of a directed verdict is the any evidence test. [Cits.]" (Punctuation omitted.) *Bowdish v. Johns Creek Assoc.*, 200 Ga. App. 93, 94 (406 SE2d 502), cert. den., 200 Ga. App. 895 (1991). "Where there is no conflict in the evidence as to any material issue, and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict, such verdict shall be directed. OCGA § 9-11-50. In reviewing grant of a directed verdict, we must decide whether all the evidence demanded it, or whether there was some evidence supporting the verdict of the jury. [Cits.]" (Punctuation omitted.) Id.

(a) We find that there was sufficient evidence to support the finding of an agreement between Autoplex and Custom Coaches for the purchase of the six vans. Even the principal of Autoplex testified that he agreed to pay the purchase price of $5,500 for each of the six vans. Therefore, the trial court did not err in failing to grant Autoplex's motion for directed verdict as to this issue.

(b) In its second basis for directed verdict, Autoplex argued that Custom Coaches' claim for consequential damages was too remote. "Remote or consequential damages are not recoverable unless they can be traced solely to the breach of the contract or unless they are capable of exact computation, such as the profits which are the immediate fruit of the contract, and are independent of any collateral enterprise entered into in contemplation of the contract." OCGA § 13-

6-8. Custom Coaches claims that because Autoplex failed to pay the purchase price for the six vans, Custom Coaches was unable to purchase conversion packages for additional vans which, once sold, would have created a profit which would have, in turn, allowed for the purchase of additional conversion packages, again creating a profit. This circular method of computing lost profits could continue ad infinitum. Custom Coaches sought to obtain their "lost profits" from the time of the breach to the time of the trial.

Custom Coaches' "lost profits" are clearly precluded by OCGA § 13-6-8. The lost profits sought by Custom Coaches are not independent of any collateral enterprise entered into in contemplation of the claimed contract. In fact, they are very dependent upon the market for Custom Coaches' vans; a market which the testimony indicated was suffering from a recession. "The rule against the recovery of vague, speculative, or uncertain damages relates more especially to the uncertainty as to cause, rather than uncertainty as to the measure or extent of the damages." (Citation and punctuation omitted.) *Crosby v. Spencer*, 207 Ga. App. 487 (428 SE2d 607) (1993). "Further, the losses must be directly traceable to the acts of the other party. [Cit.]" *Grossberg v. Judson Gilmore Assoc.*, 196 Ga. App. 107, 109 (395 SE2d 592) (1990). Custom Coaches' claimed lost profits of $36,670 are not directly traceable to Autoplex's failure to pay $33,300 on a disputed contract. Custom Coaches' claim appears to be more similar to a new form of pyramid scheme, than one for lost profits. Therefore, irrespective of whether the necessary proof was provided, Custom Coaches was not entitled to consequential damages, and the trial court should have granted Autoplex's motion for directed verdict as to this issue.

(c) Assuming arguendo, that Custom Coaches was entitled to consequential damages, Autoplex further argues that the proof submitted by Custom Coaches as to its "lost profits" was insufficient as a matter of law. We agree. "The rule of course is that where, in a suit for damages for breach of contract, the plaintiff fails to present evidence *supplying data sufficient to enable the jury to estimate with reasonable certainty the amount of his loss* traceable to the breach, he is not entitled to judgment in his favor. [Cit.]" (Emphasis supplied.) *Radlo of Ga. v. Little*, 129 Ga. App. 530, 533 (199 SE2d 835) (1973). The only evidence supporting Custom Coaches' calculations of lost profits was the testimony of Revonda Sartain, secretary/treasurer of the corporation and its bookkeeper since 1982.

Sartain's testimony as to her calculations of lost profits did not provide the jury with sufficient data to estimate lost profits, if any. She testified that she "kind of used a formula where — how much profit we would have made off of each van after we sold it." She further testified, "Normally the profit is around $1,000.00 a van. That's

before expenses. The truck driver, that figure is not in there, the delivery. Normally it's around $350.00, but I used $1,000.00 as the base for the profit on each van. $33,330.00 would do six conversion packages based on $5,000.00 per package which is a little low on some, a little high on others, but I used this as an average figure. After I did that, I divided that into how many kits that I could have done that particular week and then just kept going from there, like by not having the $33,330.00, I was not able to turn the money. If I had the $33,330.00 I could — I don't know how to explain this and it be simple — I could take that money and sell my vans and if I have that money, I would have $6,000.00 profit."

Over objection by Autoplex's counsel, Sartain testified, "Well, I can just take for instance in 1988, Custom Coaches did 2,000 vans that year. Recessionary trends, the next year when everyone seemed to be having a discrepancy whether we were or not, you could see van sales start dropping a little bit. So gradually sales with the Persian Gulf situation, van sales did drop and I used that figure because I know what we were running prior to that time and I felt like that March, things would have picked up like it normally does and we probably would have been doing not wide open like we did in '88 with 2,000 units, but I'm sure that we would have been turning more than five or six a week." She further testified that Custom Coaches had turned as many as thirty-five vans a week and as few as ten vans per week; however, they had only turned three per week during the past year. Sartain "assumed" that they could have turned six vans per week, but for Autoplex's actions. Whether this is six additional vans, or a total of six vans per week is unclear. Finally, again over Autoplex's objection, Sartain testified that her calculations revealed $353,300 in lost profits.

The substance of Sartain's testimony regarding her calculations as to lost profits has been set forth in our opinion. No additional evidence regarding past or projected gross or net profits, expenses incurred for gross profit, or saved expenses was presented during the trial. "[T]here is no evidence of either net profits or data from which [Custom Coaches'] net profits . . . could be calculated. . . . [T]here is nothing in the record to indicate what expenses [Custom Coaches] incurred in performing the services . . . and thus no evidence from which an inference could be drawn that [its] net profits had declined. . . ." *Grossberg v. Judson Gilmore Assoc.*, supra. See also *Bennett v. Smith*, 245 Ga. 725, 726 (267 SE2d 19) (1980). Therefore, assuming arguendo Custom Coaches' entitlement to lost profits, its proof of lost profits was insufficient as a matter of law.

2. In its second enumeration of error Autoplex contends that the trial court erred in admitting Revonda Sartain's testimony concerning her opinion respecting Custom Coaches' potential profits. Autoplex

argues that Sartain's testimony was too vague to be considered by the jury. However, "[a]dmissibility of evidence is a matter which rests largely within the discretion of the trial court, and if an item of evidence has a tendency to help establish a fact in issue, that is sufficient to make it relevant and admissible." (Citations and punctuation omitted.) *Crosby*, supra. We do not doubt that Sartain's testimony did not prove the amount of Custom Coaches' "lost profits"; however, the trial court did not abuse its discretion in allowing the testimony.

3. In Autoplex's third enumeration of error, it argues that the trial court erred in failing to grant its motion for judgment n.o.v. or for new trial. On appeal, Autoplex asserts that its motion for judgment n.o.v. or for new trial should have been granted on the same issues to those in its motion for directed verdict. Such issues were dealt with in Division 1 of our opinion.

We find that Custom Coaches did present sufficient evidence to support the jury's finding of a contract for the purchase of six custom vans between Autoplex and Custom Coaches. The judgment is affirmed as to that issue. However, we further find that the trial court erred in failing to grant Autoplex's motion for directed verdict on the issue of Custom Coaches' entitlement to lost future profits. Therefore, the judgment is reversed as to the award of consequential damages.

*Judgment affirmed in part and reversed in part. McMurray, P. J., and Johnson, J., concur.*

DECIDED MAY 20, 1993 —
RECONSIDERATION DENIED JUNE 3, 1993.

*John S. Jenkins*, for appellant.
*J. Hue Henry*, for appellee.