### A94A0273. J & J MATERIALS, INC. v. CONYERS SEAFOOD COMPANY, INC. et al.
(446 SE2d 781)

SMITH, Judge.

Appellant J & J Materials, Inc. filed an action on account and obtained a judgment exceeding $27,000 against appellee Conyers Seafood Company, Inc. ("CSC") for seafood CSC procured from appellant in 1988. CSC was at that time a "one-man corporation" owned by

appellee L. W. Evans. The seafood delivered to CSC was used in a business venture known to the public as "Conyers Seafood." Appellant brought the present action claiming fraud and deceit and also seeking to "pierce the corporate veil" against appellees CSC, L. W. Evans, and Marilyn Evans, who is L. W. Evans's wife and owner of nonparty L & M Evans, Inc. The latter entity succeeded CSC as operator of "Conyers Seafood." This appeal is from the grant of directed verdict against appellant on both theories.

1. We find no error in the directed verdict in favor of Marilyn Evans. She made no fraudulent representation to appellant, nor was she a shareholder in CSC. With respect to her, appellant's enumerations are without merit.

2. We likewise find no error in the directed verdict in favor of L. W. Evans on appellant's fraud claim. Appellant bases this claim on certain responses to post-judgment interrogatories made following appellant's 1988 action against CSC. Essentially, appellant claims it reasonably believed CSC was no longer in business as a result of the representations made.

However, the testimony of appellant's sole shareholder, James R. Johnson, belies this contention. Johnson admits that after this time he "called Conyers Seafood every time he called [his] attorney, and they always answered it Conyers Seafood," and that the number dialed was the "[e]xact same number we did business with and sold them the product on, which led me to believe that they were still in business." Since appellant's owner and president did not in fact believe the interrogatory responses based on his own further investigation, there is simply no basis for a fraud claim against Evans. The trial court did not err in directing a verdict in favor of Evans on appellant's fraud claim.

3. Based on our holding in Division 2, we need not consider appellant's enumeration regarding the trial court's refusal to allow evidence of Evans's prior bankruptcy experience, which appellant sought to introduce specifically in support of his fraud claim.

4. However, appellant's claim that it should be allowed to "pierce the corporate veil" of CSC and seek satisfaction against Evans personally as CSC's sole shareholder is a different matter. "In Georgia, the standard used to review the grant or denial of a directed verdict is the any evidence test. Where there is no conflict in the evidence as to any material issue, and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict, such verdict shall be directed." (Citations and punctuation omitted.) *Hixson-Hopkins Autoplex v. Custom Coaches*, 208 Ga. App. 820 (1) (432 SE2d 224) (1993).

The question presented in this case "is whether the corporation serves as the alter ego or business conduit of its owner. To establish

this, it must be shown that the stockholder['s] disregard of the corporate entity made it a mere instrumentality for the transaction of [its] own affairs; that there is such unity of interest and ownership that the separate personalities of the corporation and the [owner] no longer exist; and to adhere to the doctrine of corporate entity would promote injustice or protect fraud. When litigated, the issue of 'piercing the corporate veil' is a jury question. For the issue to be submitted to a jury there must be evidence that the corporate arrangement was a sham, used to defeat justice, to perpetrate fraud[,] or to evade statutory, contractual or tort responsibility." (Citations and punctuation omitted.) *Derbyshire v. United Builders Supplies*, 194 Ga. App. 840, 844 (2) (a) (392 SE2d 37) (1990).

J & J Materials presented evidence that would authorize a jury to find that CSC was a mere business conduit for L. W. Evans. That evidence, viewed in J & J Materials' favor, shows that CSC received nothing more than the trade name "Conyers Seafood" from Evans when it was formed; that CSC paid for the operation's furniture despite the fact that such furniture was owned by Evans personally; that Evans *personally* sold the retail end of the business — a business that supposedly belonged to CSC; and that L & M Evans, Inc. is reaping the benefits of the Conyers Seafood trade name and good will even though CSC was never compensated for it.

This evidence is certainly sufficient to present a jury question on whether Evans should be held personally liable to J & J Materials on the prior judgment against CSC. *Derbyshire*, supra. To this extent, the court's judgment must be reversed.

*Judgment affirmed in part and reversed in part. Pope, C. J., Birdsong, P. J., Beasley, P. J., Andrews, Johnson, Blackburn, JJ., and Senior Appellate Judge Harold R. Banke concur. McMurray, P. J., dissents as to Division 4 and the judgment.*

McMurray, Presiding Judge, concurring in part and dissenting in part.

I respectfully dissent from Division 4 and the judgment of reversal as it is my view that the evidence adduced at trial would not authorize a jury to "pierce the corporate veil" and thereby hold the sole shareholder liable for the judgment debt of his close corporation. While I fully agree that the trial court correctly directed the verdict in favor of Marilyn Evans, I would affirm the judgment entered on that directed verdict in its entirety. As my analysis differs from the majority, I respectfully dissent in part.

Plaintiff J & J Materials, Inc. brought an action for fraud and deceit against defendant Conyers Seafood Company, Inc. ("CSC") and its shareholders and officers, defendants L. W. Evans and his wife, Marilyn Evans. The complaint alleged that plaintiff obtained a

default judgment against CSC for seafood delivered but for which plaintiff had not been paid and that, in response to post-judgment interrogatories, L. W. Evans made material misrepresentations on behalf of CSC as to the existence and assets of CSC in order to deceive plaintiff into believing that the default judgment was uncollectible. A separate claim alleged that the corporate entity of CSC should be disregarded and that the shareholders of CSC should be individually liable to plaintiff. Defendants denied the material allegations and claimed that plaintiff had failed to exercise diligence in attempting to enforce its judgment. At a jury trial, the following undisputed facts were established: In 1973, L. W. Evans started up a seafood wholesale business and restaurant on real property that he owned in Conyers, Georgia. He ran this business as a sole proprietorship, operating under the trade name Conyers Seafood. In 1981, he incorporated his wholly-owned corporation, CSC. In June 1987, Evans individually sold the retail side of the business to Captain Don's Seafood, Inc., which simultaneously leased back restaurant space on Evans' premises and the kitchen equipment. Captain Don's Seafood, Inc. was controlled by Don Sirand, an employee of the wholesale side of CSC's business. The sale and lease agreements did not purport to transfer any shares of CSC, nor the good will, telephone numbers to, or the privilege to use the trade name Conyers Seafood. Evans still held the wholesale side of the business but intended to wind down. However, Sirand failed to pay Evans on a $17,000 promissory note by which the purchase of the restaurant was financed and in October 1987, Evans commenced an action on behalf of himself and CSC to dispossess Sirand and Captain Don's Seafood, Inc., alleging that Sirand was embezzling and breaching his sales and lease agreements. Meanwhile, plaintiff commenced proceedings against CSC in January 1988, to recover for seafood it had shipped to CSC in April 1987. Plaintiff obtained its default judgment against CSC on August 1, 1988. In October 1988, Evans was able to repossess the premises and the retail business from Sirand and Captain Don's Seafood, Inc., although Evans recovered no money from the insolvent Sirand. In November 1988, Evans and his wife formed another corporation, L & M Evans, Inc. d/b/a Conyers Seafood. They continued to run their seafood business out of the same location, using the same telephone number and same advertisements for Conyers Seafood. All of the shares in L & M Evans, Inc. are owned by Mrs. Evans. New licenses and permits were obtained for this corporation. L & M Evans, Inc. has its own bank account and its checks are printed in the name: L & M Evans, Inc. d/b/a Conyers Seafood.

On November 9, 1988, Mr. Evans, as president of CSC, verified CSC's response to plaintiff's post-judgment interrogatories as follows: "[CSC] operated a business located at 996 Green Street, Conyers,

Georgia, until June 10, 1987. On that date, the building and premises were leased to Captain Don's, Inc., a corporation having absolutely nothing to do with the Defendant corporation. Subsequent to that date, Captain Don's Seafood, Inc. has operated the seafood market located at 996 Green Street, Conyers. [CSC] is no longer in business, no one owes [CSC] any money. [CSC] owns no automobile, truck or other vehicle. . . . The Defendant, [CSC] has no savings, commercial account or other account with any financial institution. . . . The Defendant, [CSC] owns no real estate."

At the close of all the evidence, the trial court directed a verdict in favor of defendants on both claims. This appeal followed.

Plaintiff contends the trial court erred in directing the verdict as to its claims for fraud and deceit and for piercing the corporate veil, arguing that it presented a prima facie case.

"The five elements of fraud and deceit in the State of Georgia are: (1) false representation made by defendant; (2) scienter; (3) intention to induce plaintiff to act or refrain from acting in reliance by the plaintiff; (4) justifiable reliance by the plaintiff; (5) damage to the plaintiff. See *Shaw v. Cook County Federal Sav. &c. Assn.*, 139 Ga. App. 419, 420 (228 SE2d 326); Code Ann. § 105-302 [now OCGA § 51-6-2]." *Hardy v. Gordon*, 146 Ga. App. 656, 657 (247 SE2d 166). "Concealment per se amounts to actual fraud when from any reason one party has a right to expect full communication of the facts from another." *Morris v. Johnstone*, 172 Ga. 598, 605 (158 SE 308). See also OCGA § 23-2-53. The statements submitted on behalf of CSC in response to plaintiff's post-judgment interrogatories are true. It is uncontradicted that CSC was an unused shell corporation with no tangible assets at the time of the interrogatory responses. It is also undisputed that Evans then carried on his business via another properly incorporated artificial entity. Nevertheless, plaintiff contends Evans tried to conceal assets subject to its judgment, arguing that CSC was owed money by Captain Don's Seafood, Inc. pursuant to the sales and lease agreements.

" '[T]he corporation is prima facie a distinct legal entity with rights and liabilities which are separate from those of [its shareholders].' *Midtown Properties, Inc. v. Geo. F. Richardson*, 139 Ga. App. 182, 185 (228 SE2d 303)." *Jones v. Adamson's, Inc.*, 147 Ga. App. 282, 283 (4) (248 SE2d 514). The agreements in the case sub judice are between Captain Don's Seafood, Inc. and L. W. Evans, individually. CSC is not a party to those agreements and has no rights thereunder. If any money were owed to Evans individually pursuant to those agreements, that fact would not render false and misleading CSC's statement that no one owed it any money. Similarly, the facts that Evans' new corporation used the same telephone number as CSC and operated out of the same location leased to it by Evans "do not pre-

sent material issues of fact in response to [the Evans'] prima facie status as insulated from liability [for the debts of CSC]. *Midtown Properties, Inc.,* supra; *Stephens County v. Gaines,* 128 Ga. App. 661 (1) (197 SE2d 424)." *Jones v. Adamson's, Inc.,* 147 Ga. App. 282, 283 (4), 284, supra. In the case sub judice, the circumstances relied on by plaintiff provide no factual basis for a claim of fraud and deceit; nor does the evidence provide a basis for piercing the corporate veil. " '(O)ne who deals with a corporation as such an entity cannot, in the absence of fraud, deny the legality of the corporate existence for the purpose of holding the owner liable.' *Lamas v. Baldwin,* 140 Ga. App. 37, 40 (230 SE2d 13)." *Williams Plaza v. Sedgefield Sportswear &c.,* 164 Ga. App. 720, 723 (297 SE2d 342).

Nevertheless, the majority holds that the following circumstances would authorize a jury to pierce the corporate veil and hold L. W. Evans personally liable for the default judgment against CSC: CSC received nothing more than the trade name "Conyers Seafood" from Evans when it was formed; that CSC paid for furniture; and that Evans personally sold the retail end of the business which the majority assumes belongs to CSC. In addition, the new corporation L & M Seafood, Inc. is reaping benefits from the trade name "Conyers Seafood" and from such good will of CSC remaining after Sirand dissipated it. It is my view that such circumstances are not "any evidence" of fraud, injustice, or an improper attempt to avoid statutory, contractual, or tort responsibilities. Yet, the majority holds that this evidence authorizes a jury verdict to pierce the corporate veil and hold the sole shareholder personally liable for the antecedent debt of the close corporation. It is my view that this holding comes perilously close to permitting the sole shareholder of a close corporation to be personally liable for the debts of his corporation simply because he is the sole shareholder. "[A]lthough grossly inadequate capitalization and preferential payments may, under some circumstances, rise to a level of abuse of the corporate form, the undisputed facts of this case demonstrate no abuse of the corporate form sufficient to justify piercing the corporate veil. There is no evidence that [Evans] seized assets in order to strip the [c]orporation of assets necessary to pay existing debts. There is nothing in the record to indicate fraudulent intent." *Hickman v. Hyzer,* 261 Ga. 38, 40 (2) (401 SE2d 738). Rather, in the case sub judice, the unrefuted testimony of Evans is that he put his own money back into the business to rebuild it after Sirand was ousted. As it is my view that the trial court did not err in directing the verdict in favor of L. W. Evans on plaintiff's claims for fraud and deceit or for piercing the corporate veil, I would affirm the judgment in its entirety. See *Williams Plaza v. Sedgefield Sportswear &c.,* 164 Ga. App. 720, 724, supra. Accordingly, I respectfully dissent to the judgment of reversal.

Decided July 15, 1994.

Ronald C. Conner, for appellant.

John T. Strauss, Burkett & Schneider, Gene Burkett, for appellees.