A95A2448. AMERICAN CAR RENTALS, INC. et al. v. WALDEN LEASING, INC.
(469 SE2d 431)

BEASLEY, Chief Judge.

Walden Leasing, Inc. ("Walden") sued American Car Rentals, Inc. and its five personal guarantors ("American") for allegedly failing to make timely payments pursuant to a motor vehicle lease agreement into which the companies had entered two years earlier. Walden's complaint sought all unpaid amounts under the lease agreement and the related vehicle lease orders as well as reasonable costs and attorney fees.

American counterclaimed for breach of contract, disparagement, and tortious interference with American's business opportunities and relationships. It claimed that Walden's failure to provide the automo-

biles it ordered in a timely manner destroyed American's ability to conduct business and to maintain its customer base. American contended that Walden breached oral agreements by reclaiming the leased vehicles before American had an opportunity to obtain replacement vehicles, thereby effectively destroying American's car rental business. It also asserted that as a result of Walden's disparaging remarks, American's franchisor cancelled American's line of credit, making it impossible for American to obtain automobiles to replace those reclaimed by Walden.

The trial court granted Walden's motion to dismiss American's counterclaim and ordered the parties to arbitration. In *American Car Rentals v. Walden Leasing*, 215 Ga. App. 621 (451 SE2d 537) (1994), this Court vacated the trial court's order because of procedural error for failure to comply with OCGA § 9-11-56. Thereafter, following a summary judgment motion hearing, the trial court granted summary judgment to Walden on American's counterclaim and ordered the case to arbitration.

1. American urges that summary judgment was precluded by unresolved questions of material fact.

(a) The record shows that Walden as lessor and American as lessee entered into a motor vehicle lease agreement ("Agreement") under which Walden leased vehicles to American for American's car rental business. In connection with the Agreement, the parties executed vehicle lease orders ("VLO's") describing which vehicles were being leased and the amounts due as monthly lease payments. The Agreement included previously existing VLO's and provided for subsequently executed VLO's. When American's business fluctuated and it needed more automobiles, it would contact Walden and request specified additional vehicles. Walden would then attempt to fill American's request and a delay might ensue if the requested vehicles were not available. Only when Walden was able to satisfy American's request did the parties then complete their transaction and execute a VLO.

According to the Agreement, Walden could not be held liable for a late delivery or a failure to deliver the number and type of vehicles American requested because American waived all rights provided by Uniform Commercial Code sections 2A-508 through 2A-522, including the right to cover, the right to substitute goods, and the right to damages for non-delivery. In addition, the Agreement seeks to insulate Walden from any claim relating to delivery delays as follows: "The Lessor shall not be liable to the Lessee for the failure to deliver any Vehicle leased hereunder for any reason." Also, the Agreement prohibits oral modifications as follows: "This instrument, and the duly executed Vehicle Lease Order(s), and other addenda attached hereto, constitute the entire agreement between the parties, and may be

modified only in writing duly executed by both parties."

To avoid the plain terms of the Agreement, American seeks to characterize its requests for vehicles and Walden's efforts to supply vehicles as oral agreements not subject to the Agreement. American claims that a regular course of conduct developed between the parties through which Walden extended the term of leases in order to mitigate American's injury when Walden failed to perform under the contracts entered for specific numbers of vehicles, at specific prices for delivery, on specific dates. American contends that a new and different oral contract thereby replaced any earlier agreement and that the Agreement's written modification requirement did not apply because the parties modified their agreement through their regular business practices.

"Waiver of a written modification requirement in a contract may be established through the course of conduct between the parties. [Cit.]" *Caribbean Lumber Co. v. Anderson*, 205 Ga. App. 415, 417, n. 1 (422 SE2d 267) (1992). Although parties can modify their agreement through their course of conduct and regular business practices, American has failed to prove that occurred here. Instead, the record shows that the parties proceeded according to the terms of the Agreement and routinely executed VLO's. The Agreement specifically provided for subsequent leasing agreements whereby American could lease vehicles from Walden on an as-needed basis.

The plain contract language of the Agreement is clearly inconsistent with any oral guarantees or oral commitments to deliver vehicles by particular dates or to extend the leasing period. Moreover, the Agreement contains a waiver clause protecting Walden from any failure to insist on the performance of any term or condition. Even if Walden agreed to a temporary extension of a lease term, it did not waive its rights under the Agreement to later elect its remedy, including taking immediate repossession of the vehicles. In addition, according to paragraph 2 (H) of the standard VLO, "Unless the Lessee and the Lessor have agreed to enter into a Lease Term Extension Option under a Schedule 'O' to this VLO, the Lessee has no option to renew or extend the lease term of a Vehicle."

By the merger of any alleged oral agreements into the Agreement or by the application of the parol evidence rule, however, any such alleged oral representations, assuming they occurred, were not enforceable. See OCGA §§ 11-2A-202; 13-2-2; *Harden v. Orr*, 219 Ga. 54, 56 (1) (131 SE2d 545) (1963).

(b) In the consolidated pretrial order, American stated it was seeking "damages for lost profits, both past and future."[1] The express

---

[1] Although American raised tort claims in its counterclaim, it failed to pursue those

terms of the Agreement limit American's remedies to only actual and direct damages: "The lessee (American) agrees that the lessee's sole and exclusive remedy for any matter or cause of action related directly or indirectly to any breach by the lessor (Walden) of this lease agreement shall be a cause of action sounding in contract, and with damages limited to actual and direct damages incurred. Under no event shall the lessor be liable for any consequential, special, exemplary, punitive, incidental or indirect damages, including without limitation, loss of profit or goodwill." Paragraph 11 (E). A clause excluding the recovery for consequential damages is valid and enforceable, unless prohibited by statute or public policy. *Mark Singleton Buick v. Taylor*, 194 Ga. App. 630, 633 (2) (391 SE2d 435) (1990). There is no applicable prohibition.

American seeks to avoid the limitation of damages provision on the ground that the alleged oral contracts which are the subject of the counterclaim preceded the formation of the written contract containing the limitation language. As discussed above, the purported oral agreements were not enforceable. Moreover, the Agreement explicitly bars recovery for consequential damages and American has failed to show that any of the VLO's permitted recovery for lost profits. American cannot recover what is expressly disallowed by the contractual language of the Agreement it signed.

2. Finally, American contends the court erred in ordering the case to be submitted to binding arbitration in Minnesota after the parties knowingly, wilfully and voluntarily waived the contractual provisions pertaining to binding arbitration and elected to proceed to jury trial.

At the outset, we reject Walden's contention that this Court lacks jurisdiction over the trial court's order directing the parties to binding arbitration due to the absence of a certificate for immediate review, as required by OCGA § 5-6-34 (b). "Section 5-6-34 (d) is . . . broad enough to permit a party to raise on the appeal of a directly appealable order issues regarding an order that, standing alone, is subject to the application requirements of § 5-6-35." *Martin v. Williams*, 263 Ga. 707, 709 (3) (438 SE2d 353) (1994). This serves to avoid piecemeal review. To the extent our decision in the earlier appeal in this case implies the contrary, it is overruled. In the case cited by Walden, *Phillips Constr. Co. v. Cowart Iron Works*, 250 Ga. 488, 490 (299 SE2d 538) (1983), the only matter appealed was the trial court's denial of appellant's motion to stay judicial proceedings pending arbitration. That appeal thus required adherence to the interlocutory procedure.

It is undisputed that the Agreement requires binding arbitration.

claims in its response to Walden's motion for summary judgment.

American claims that both parties by their conduct from the outset of the dispute, continuously and unambiguously abandoned the arbitration clause, thereby rendering it inapplicable. " 'An agreement to arbitrate is waived by any action of a party which is inconsistent with the right of arbitration. (Cits.)' *McCormick-Morgan, Inc. v. Whitehead Elec. Co.*, 179 Ga. App. 10, 13 (345 SE2d 53) (1986)." *Tillman Group v. Keith*, 201 Ga. App. 680 (411 SE2d 794) (1991).

Walden initiated the legal action instead of proceeding to arbitration. Its complaint does not seek arbitration or even mention it. At no point did Walden file a motion to compel arbitration or to stay the court proceedings to await arbitration. Before the case reached this Court the first time, Walden stipulated it to the active jury list for trial, did not object to the court order placing it on the ready list, and all parties participated in a pretrial conference which resulted in a consolidated pretrial order never referencing arbitration.

The case has been pending since January 1993 and proceeded twice to the appellate level. By taking actions inconsistent with the arbitration clause, the parties waived that provision. *Weyant v. MacIntyre*, 211 Ga. App. 281, 283 (3) (438 SE2d 640) (1993). See *Nat. Parents' Resource Institute &c. v. Peachtree Hotel Co.*, 201 Ga. App. 637, 638 (2) (411 SE2d 884) (1991) (holding arbitration clause may be repudiated, waived or abandoned by either or both parties to a contract). Consequently, the trial court's ruling on arbitration is reversed.

*Judgment affirmed in part and reversed in part. McMurray, P. J., Birdsong, P. J., Pope, P. J., Andrews, Johnson, Smith and Ruffin, JJ., concur. Blackburn, J., concurs in the judgment only.*

DECIDED FEBRUARY 22, 1996 — 

*Evert & Weathersby, Michael N. Weathersby*, for appellants.
*Lamberth, Bonapfel, Cifelli, Wilson & Stokes, Gary D. Stokes, Stuart F. Clayton, Jr.*, for appellee.