A97A0802, A97A0803. IMAGING SYSTEMS INTERNATIONAL, INC. et al. v. MAGNETIC RESONANCE PLUS, INC.; and vice versa.
(490 SE2d 124)

BEASLEY, Judge.

Magnetic Resonance Plus, Inc. ("MRP") sued North Georgia Diagnostic Imaging, Ltd. and its managing agent Imaging Systems International, Inc. (collectively "NGDI") for breach of contract arising out of NGDI's prematurely terminating its contract with MRP. Following a bench trial, the judge awarded MRP damages equal to MRP's anticipated profit on the contract, despite a contract provision prohibiting MRP from recovering "any lost profits." We hold that the contract provision precluded the award and reverse.

On March 23, 1994, NGDI entered into a three-year contract with MRP for MRP to service and repair NGDI's magnetic resonance imaging ("MRI") equipment in Atlanta. After a period of months, NGDI became dissatisfied with MRP's performance and terminated the contract "effective immediately," despite a contract provision requiring that NGDI give MRP a 30-day written notice to cure before termination. NGDI would not allow MRP back on the premises to service the MRI. Protesting this action, MRP nevertheless offered to rescind a related contract and refund monies paid thereunder if NGDI returned certain equipment, which NGDI did. MRP, however, refused to refund the monies. When MRP sued NGDI for breach of contract, NGDI counterclaimed for the unrefunded monies.

At trial, MRP presented evidence of what was remaining due under the contract and what some of its expenses would have been had it been allowed to complete the contract. Following the presentation of MRP's case, NGDI moved for an involuntary dismissal on MRP's claim on the grounds that (1) the contract prohibited the damages sought by MRP and (2) MRP had failed to prove its damages. The trial court denied the motion and, following the presentation of NGDI's case, (1) awarded MRP $21,584.37 as MRP's anticipated ten percent profit on the amounts remaining due under the contract, (2) awarded MRP its attorney fees pursuant to a contractual provision, and (3) awarded NGDI the unrefunded monies requested under its counterclaim. The court also awarded NGDI its attorney fees incurred in pursuing that counterclaim, upon finding that MRP was stubbornly litigious and caused unnecessary trouble and expense in litigating the counterclaim. Citing the grounds set forth in its involuntary dismissal motion, NGDI appealed the awards to MRP, and MRP cross-appealed the amount of damages on those awards.

1. The contract provides: "5.1 LIMITATION OF LIABILITY NEITHER THE **CUSTOMER** NOR **MRP** WILL BE LIABLE TO EACH OTHER OR ANY OTHER PARTY FOR ANY LOST PROFITS OR ANY INCIDENTAL, SPECIAL, OR CONSEQUENTIAL DAMAGES RELATING TO THIS AGREEMENT." NGDI contends that this provision prohibits MRP from recovering the profits it would have received had it been allowed to perform under the contract. Clearly it does.

"The construction of a contract is a question of law for the court." OCGA § 13-2-1.[1] "The cardinal rule of construction is to ascertain the intention of the parties. If that intention is clear and it contravenes no rule of law and sufficient words are used to arrive at the intention, it shall be enforced irrespective of all technical or arbitrary rules of construction." OCGA § 13-2-3. The question is whether this contract provision prohibited the trial court's award to MRP.

Where a party sues on a terminated executory contract, the damages are similar to those recoverable by a contractor suing on a terminated construction contract. See *Franklin v. Demico, Inc.*, 179 Ga. App. 775, 779 (2) (347 SE2d 718) (1986). "The basic component of damages recoverable by a contractor when a construction contract is wrongfully breached by the owner is the net profit to which the contractor would have been entitled had full performance of the contract

---

[1] Even though the agreement states that it is to be construed in accordance with the laws of the United States and the State of California, no party has pled California law. OCGA § 9-11-43 (c). Nor is there a federal statute on the general construction of contracts. Accordingly, this Court applies the law of the State of Georgia. *Avnet, Inc. v. Wyle Laboratories*, 263 Ga. 615, 621 (3) (437 SE2d 302) (1993).

been permitted. That figure is reached by subtracting from the contract price the amount which full performance would have cost the contractor" and further subtracting any progress payments already received by the contractor. *Williams v. Kerns*, 153 Ga. App. 259, 266-267 (1) (265 SE2d 605) (1980). "[T]he net result of these calculations is that the contractor is awarded the benefits of his bargain, the profit he would have realized had he been permitted to perform the contract completely." Id. at 261. See *Franklin v. Demico, Inc.*, supra, 179 Ga. App. at 779 (the plaintiff is entitled to "the profits necessarily inherent in the contract").

Following this formula, the trial court reviewed MRP's evidence concerning the expenses it saved and found MRP did not prove some key variable costs. Relying instead on a letter in which MRP projected its net profit to be between five and ten percent, the trial court concluded that MRP's "profit would have been $21,584.37, which is 10% of the remaining payments for service (i.e., $215,843.75)," and this became the award to MRP. Because the contract specifically prohibited the recovery of "any lost profits," this award was error.

MRP claims that the lost profits prohibited by the contract are "profits lost by *the rest of [MRP's] business* that arise as a consequence of the other party's breach of one particular contract, such as the loss of goodwill to the company, the resulting loss of other business contracts or clients, the loss of other business opportunities, and other consequential losses." Citing *Redman Dev. Corp. v. Piedmont Heating &c.*, 128 Ga. App. 447 (197 SE2d 167) (1973), MRP argues that the term is not intended to prevent MRP from recovering the benefit of the bargain of this particular contract, for otherwise "the plaintiff would have no right to any recovery for breach of contract."

MRP's arguments fail. First, the loss of other business opportunities, other profits and goodwill falls squarely within the meaning of consequential losses, which are separately listed in the contract as other kinds of damages and are *also* prohibited. See OCGA § 13-6-8; *American Car Rentals v. Walden Leasing*, 220 Ga. App. 314, 317 (1) (b) (469 SE2d 431) (1996);[2] *Piggly Wiggly Southern v. Eastgate Assoc., Ltd.*, 195 Ga. App. 10, 12 (392 SE2d 337) (1990). Consequential damages, which may include "profits which might accrue collaterally as a result of the contract's performance," are a separate concept from direct damages, which may include "profits necessarily inherent in

[2] The contract in *American Car Rentals v. Walden Leasing*, supra, defined the only lost profits at issue there as consequential damages. The court in that case did not address whether, absent this limiting definition in the term, "lost profits" would also include direct damages that represent the benefit of the bargain. See also *Hixson-Hopkins Autoplex v. Custom Coaches*, 208 Ga. App. 820, 821 (1) (b) (432 SE2d 224) (1993) (plaintiff sought only to recover those lost profits which would constitute consequential damages, not those which would constitute direct damages).

the contract." *Franklin v. Demico, Inc.*, supra, 179 Ga. App. at 779 (2). Thus there are two types of lost profits: (1) lost profits which are direct damages and represent the benefit of the bargain (such as a general contractor suing for the remainder of the contract price less his saved expenses), and (2) lost profits which are indirect or consequential damages such as what the user of the MRI would lose if the machine were not working and he was unable to perform diagnostic services for several patients. The contract at issue did not distinguish between the two types; it forbade the recovery of "ANY LOST PROFITS." No exceptions were provided for. The meaning of "any" in context is "all." Both consequential damages *and* direct damages (to the extent direct damages concern lost profits) are not recoverable under the contract.

Second, even though this contract provision may severely if not completely restrict MRP's ability to recover for this breach of contract, parties are free to agree to such provisions. "Absent a public policy interest, contracting parties are free to contract to waive numerous and substantial rights, including the right to seek recourse in the event of a breach by the other party." (Citations and punctuation omitted.) *Piedmont Arbors Condo. &c. v. BPI Constr. Co.*, 197 Ga. App. 141, 142 (397 SE2d 611) (1990). "[I]n Georgia there is no generally applicable rule of law forbidding one contracting party from waiving all recourse in the event of breach by the other. [Cit.]" *Orkin Exterminating Co. v. Stevens*, 130 Ga. App. 363, 369 (203 SE2d 587) (1973). See *West Side Loan Office v. Electro-Protective Corp.*, 167 Ga. App. 520 (306 SE2d 686) (1983) (contract provision enforced in which party disclaimed responsibility for any losses due to " 'failure to perform any obligation under' " the agreement); *Stefan Jewelers v. Electro-Protective Corp.*, 161 Ga. App. 385, 387 (288 SE2d 667) (1982) (provision upheld in which plaintiff waived any recovery for losses caused by defendant's breach); *Monroe v. Martin*, 137 Ga. 262 (73 SE 341) (1911) (note provision upheld in which plaintiff agreed not to sue on the note). MRP's reliance on *Redman Dev. Corp. v. Piedmont Heating &c.*, supra, 128 Ga. App. 447, is unavailing, for *Redman* simply held that a prohibition against recovering lost profits, which was found in the contract paragraph discussing remedies for delay, applied only to delay claims and not to the plaintiff's claim in that case for lost profits arising from premature termination of the contract.[3]

Provisions severely restricting remedies act as exculpatory clauses and therefore " 'should be explicit, prominent, clear and

---

[3] *Redman* was overruled to the extent it misstated the correct measure of damages. *Crankshaw v. Stanley Homes*, 131 Ga. App. 840, 842 (1) (207 SE2d 241) (1974).

unambiguous.'" (Citation omitted.) *Dept. of Transp. v. Arapaho Constr.*, 180 Ga. App. 341, 343 (1) (349 SE2d 196) (1986), aff'd, 257 Ga. 269 (357 SE2d 593) (1987). See *Altama Delta Corp. v. Howell*, 225 Ga. App. 78, 80 (1) (483 SE2d 127) (1997); *Dept. of Transp. v. APAC-Ga.*, 217 Ga. App. 103, 106 (3) (456 SE2d 668) (1995).[4] The exculpatory clause is set off in its own paragraph with the heading "LIMITATION OF LIABILITY" and with the key language all capitalized. The prohibition against the recovery of "any lost profits" clearly and unambiguously refers to the measure of damages which would have been available to MRP for NGDI's wrongful termination. Accordingly, the provision is enforceable as written.

Moreover, the contract also prohibits the recovery of "special damages" relating to the agreement. Special damages are "those which actually flow from a tortious act." OCGA § 51-12-2. "[E]ven though the statutory definitions of general and special damages (see OCGA § 51-12-2 (a) and (b)) refer to tortious acts, general and special damages also may be recovered in contract actions if the general and special damages are not remote or consequential (OCGA § 13-6-8) and 'are such as arise naturally and according to the usual course of things from such breach and such as the parties contemplated, when the contract was made, as the probable result of its breach.' OCGA § 13-6-2." *Bill Parker & Assoc. v. Rahr*, 216 Ga. App. 838, 841 (4) (456 SE2d 221) (1995). Similar to the lost profit calculation discussed above, "special damages" in an executory contract action may be calculated by subtracting from the total amount remaining due on a contract the expenses the nonbreaching party will save by not having to complete the contract. *Solon Automated Svcs. v. Pines Assoc.*, 156 Ga. App. 34 (1), 35 (274 SE2d 12) (1980). See *Piggly Wiggly Southern v. Eastgate Assoc., Ltd.*, supra, 195 Ga. App. at 13 ("special damages" in a contract action are those that flow directly from the breach, such as expenses incurred at the breaching party's direction or as a consequence of the breach, less the benefits accruing to the nonbreaching party). A contractual provision prohibiting the recovery of special damages precludes an award for contractual profits actually lost as a result of the breach. Thus, the award of lost profits to MRP also fails under this language.

The award of $21,584.37 to MRP is vacated. Because the trial court awarded attorney fees based on its award of lost profits to MRP, the attorney fees award to MRP is also vacated.

2. In light of the holding in Division 1, the other enumerations of error, all of which go to the calculation of the damages awarded to

---

[4] Any ambiguity in an exculpatory clause is construed against the drafter. *Altama Delta Corp. v. Howell*, supra, 225 Ga. App. at 80. Here we have no ambiguity.

MRP, are moot. The awards on the counterclaim not having been appealed, those awards remain intact.

3. On remand, the trial court may not award MRP nominal damages, for MRP did not ask for nominal damages in the pre-trial order nor at trial. See *Ackley v. Strickland*, 173 Ga. App. 784 (328 SE2d 549) (1985) (plaintiff must ask for nominal damages before or during trial); *Bradley v. Godwin*, 152 Ga. App. 782, 784-789 (3) (264 SE2d 262) (1979). But the trial court should consider whether, in light of the holdings of this opinion, MRP is entitled to attorney fees under the contract. See *Hardwick, Cook & Co. v. 3379 Peachtree, Ltd.*, 184 Ga. App. 822, 824-825 (2) (363 SE2d 31) (1987). Cf. *Herrli Homes v. Roon*, 175 Ga. App. 85, 87 (3) (332 SE2d 379) (1985).

*Judgment affirmed in part and reversed in part and remanded with direction. Andrews, C. J., McMurray, P. J., Birdsong, P. J., and Ruffin, J., concur. Smith and Eldridge, JJ., dissent.*

SMITH, Judge, dissenting.

I respectfully dissent. I would affirm the judgment because, in my view, the contract provision prohibiting the recovery of lost profits does not preclude the recovery sought by MRP.

I agree with the majority that the measure of damages applicable for breach of contract in this case is similar to that used when a contractor brings an action for breach of a construction contract. That measure is the unpaid contract price less the amount saved by the contractor as a result of the breach — the contractor's costs involved in completing the contract. *Williams v. Kerns*, 153 Ga. App. 259, 262 (265 SE2d 605) (1980). This measure is sometimes referred to as "anticipated profit" or "expected profit." It is not identical to "lost profits." Anticipated profit in a case like this, where one is prevented from reaping the benefit of a bargain, is the measure of the *direct* damage. Unlike "lost profits," it may never exceed the contract price. *Crankshaw v. Stanley Homes*, 131 Ga. App. 840, 841-842 (1) (207 SE2d 241) (1974).[5] And unlike "lost profits," it is not speculative; it is defined by the contract price.

Paragraph 5.1 of the contract prohibits only liability for "lost profits or any incidental, special, or consequential damages." The term "lost profits" is a term of art. It has often been used in contracts to mean a particular type of consequential damages. See, e.g., *American Car Rentals v. Walden Leasing*, 220 Ga. App. 314, 316-317 (1) (b) (469 SE2d 431) (1996) (lost profits included in general contractual

---

[5] *Crankshaw,* supra, overruled *Redman Dev. Corp. v. Piedmont Heating &c.*, 128 Ga. App. 447 (197 SE2d 167) (1973), relied upon by MRP (and mentioned in the majority opinion) and several other cases because *Redman* and those other cases incorrectly state the applicable measure of damages.

prohibition against " 'consequential, special, exemplary, punitive, incidental or indirect damages' "). As such, it is intended to allow as a recovery for breach of the contract only those damages *directly* attributable to the acts of the other party and to prohibit recovery of those items of damage only *indirectly* so attributable. See *Hixson-Hopkins Autoplex v. Custom Coaches*, 208 Ga. App. 820, 821 (1) (b), (c) (432 SE2d 224) (1993) (lost profits are consequential damages not directly attributable to failure to pay on contract).

The contract provision in issue here did just that. But the loss of MRP's "anticipated" or "expected" profit is a direct result of NGDI's terminating the contract prematurely. It is therefore recoverable. I would affirm the judgment.

I am authorized to state that Judge Eldridge joins in this dissent.

DECIDED JULY 11, 1997 —
RECONSIDERATION DENIED JULY 28, 1997 — ▮▮▮▮▮▮▮

*Chambers, Chambers & Chambers, Timothy D. Chambers, John W. Chambers, Jr.*, for appellants.

*Adam R. Gaslowitz & Associates, Adam R. Gaslowitz, Michael S. Wakefield, Timothy J. McGann*, for appellee.