A97A1444. SOUTHEAST REDUCING COMPANY, INC. et al.
v. WASSERMAN.

(493 SE2d 201)

ANDREWS, Chief Judge.

Norman Wasserman as lessor sued Southeast Reducing Company, Inc. (Southeast), James Mathews and Nancy Mathews as lessees alleging the defendants breached a commercial lease agreement. All three defendants filed answers denying liability and bringing counterclaims for breach of the lease and fraud. The trial court granted Wasserman's motion for summary judgment on his complaint against all three defendants and on all the defendants' counterclaims and entered judgment in favor of Wasserman in the amount of $55,571.70 for the amount due under the lease.[1] All three defendants appeal.

In reviewing the trial court's grant of Wasserman's motion for summary judgment, we construe the evidence and all reasonable presumptions and inferences arising therefrom in favor of the non-movants. *Jenkins v. Hall*, 226 Ga. App. 437, 438 (487 SE2d 66) (1997).

In support of summary judgment, Wasserman produced a lease agreement under which he, as lessor, leased commercial space for

---

[1] A previous grant of summary judgment to Wasserman was reversed in *Southeast Reducing Co. v. Wasserman*, 213 Ga. App. 763 (445 SE2d 859) (1994), for failure to allow the defendants, upon request, to oppose the motion by oral argument.

use as a weight loss clinic. The lessees under this lease were Southeast (by James Mathews as president), James Mathews and Nancy Mathews. The lease term commenced on August 1, 1987, and ended on September 15, 1992. It provided for monthly rent in the amount of $1,915.52 and included a provision for the lessor to provide up to $41,000 to construct improvements to the premises. Wasserman stated by affidavit that the lessees breached this lease when they failed to make monthly rent payments in January, February and March 1991 and abandoned the premises without further payment of rent on March 3, 1991.[2] The affidavit calculated the total amount due under the terms of the lease through the September 15, 1992 expiration date as $55,571.70.

The defendants provided affidavits in response to the motion. James Mathews stated by affidavit that the lease relied upon by Wasserman and signed by all three defendants (the Wasserman lease) was voided by the parties after it was agreed that his wife, Nancy Mathews, would have no personal liability as a lessee. He stated that, after the Wasserman lease was voided, a second lease (the Mathews lease) was agreed upon and signed by Wasserman as lessor and by Southeast (by James Mathews as president) and James Mathews as lessees. The Mathews lease was produced in response to the motion and showed the same commencement date as the Wasserman lease (August 1, 1987), but a different expiration date of July 31, 1991. The Mathews lease also differed in that it provided for less monthly rent in the amount of $1,619.52 in addition to a provision that the lessor would provide up to $21,300 to construct improvements to the premises. He stated that the first month's rent and a security deposit of one month's rent, both in the amount of $1,619.52, were paid in accordance with the Mathews lease.

James Mathews further averred that after the Mathews lease was entered into, the parties agreed in October or November 1987 to increase the monthly rental to $1,915.52 (the same rental amount as the Wasserman lease), and that a third lease was entered into by the parties to reflect the change in the monthly rent. He purports to produce a single page from the third lease showing monthly rent due of $1,915.52. The page, except for initials at the bottom, appears identical to page 2 of the 11-page Wasserman lease. The rest of the alleged third lease, including evidence of all of its remaining terms and signatories, is nowhere to be found in the record. The affidavit also states that Wasserman failed to pay for improvements to the premises as agreed. Mr. Mathews admitted that the lessees vacated the

---

[2] Although the affidavit refers to abandonment on March 3, 1992, this appears to be a scrivener's error. Other evidence produced by Wasserman clearly shows that the abandonment occurred on March 3, 1991.

premises in March 1991.

Nancy Mathews' affidavit also states that the Wasserman lease which she signed was voided by all the parties. She also contends that the Wasserman lease was the first lease agreement and that it was superseded by a second lease agreement, the Mathews lease, to which she was not a party. However, contrary to James Mathews and Southeast, she makes no reference to a third lease and states that the Mathews lease "accurately reflects the relationship between all parties concerning the lease of the premises."

Wasserman provided additional affidavits in response to these claims in which he explained that in August 1987, he initially signed the Mathews lease which was signed by lessees Southeast and James Mathews. He stated that a second lease agreement, the Wasserman lease, was subsequently negotiated by the lessees with him and executed in or about August 1987, by him and lessees Southeast and James and Nancy Mathews. He further stated that beginning with the October 1987 payment, the parties began operating under the Wasserman lease. He stated that he paid the sums due under the lease for improvements to the premises. The record also shows rent checks to Wasserman from the lessees from 1987 to 1991, reflecting payments for monthly rent in the amount due under the terms of the Wasserman lease.

1. James Mathews and Southeast claim that the applicable lease is not the Wasserman lease or the Mathews lease but a third lease which they failed to produce. It may be inferred from James Mathews' affidavits that he claims this third lease retained an expiration date of July 31, 1991; that it was not signed by Nancy Mathews; and that it materially varied from the Mathews lease only in the increase of monthly rent from $1,619.52 to $1,915.52. We conclude, however, that the failure to produce the third lease or to explain its absence is fatal to any consideration of the evidence of it supplied by affidavit in opposition to summary judgment.

"In order to admit secondary evidence, it shall appear that the primary evidence for some sufficient cause is not accessible to the diligence of the party. This showing shall be made to the court, who shall hear the party himself on the question of diligence and the inaccessibility of the primary evidence." OCGA § 24-5-2. "If a paper shall have been lost or destroyed, proof of the fact to the court shall admit secondary evidence. The question of diligence is one for the sound discretion of the court." OCGA § 24-5-21; see *Miller v. Steelmaster Material Handling Corp.*, 223 Ga. App. 532, 534-535 (478 SE2d 601) (1996); OCGA § 24-5-4. James Mathews made no attempt to explain the absence of the claimed third lease or to show he exercised any diligence to find it. Accordingly, the evidence he presented in support of

the claimed third lease was of no probative value in response to the motion.

In the absence of any probative evidence of the terms of the claimed third lease agreement, James Mathews' testimony is contradictory. He claims that the Wasserman lease calling for monthly rent of $1,915.52 was voided and that the Mathews lease was agreed upon at a monthly rent of $1,619.52 with a term expiring on July 31, 1991. Yet he admits that after he paid a month's rent at $1,619.52, he thereafter paid rent commencing in October 1987 at the rate of $1,915.52 per month, the amount set in the Wasserman lease, which had a term expiring on September 15, 1992. He attempts to explain why he could pay rent in the amount due under the Wasserman lease, but not be bound by it, by asserting the existence of a missing third lease which called for the same rent as the Wasserman lease. For the reasons previously stated, the third lease explanation is to no avail.

Under the rule of *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680) (1986), we construe the unexplained contradictory testimony against James Mathews and Southeast. So construed, we find that the remaining evidence supports the conclusion that the Wasserman lease was the controlling lease under which James Mathews and Southeast were both lessees owing monthly rent of $1,915.52 with a term expiring on September 15, 1992. Moreover, we find Wasserman's explanation as to the initial adoption of the Mathews lease followed by the subsequent adoption of the Wasserman lease to be consistent with the evidence showing the actions of the parties. Accordingly, we conclude that no genuine issue of fact remains as to this issue. The trial court correctly granted summary judgment to the extent it found that James Mathews and Southeast were lessees under the Wasserman lease.

2. Nancy Mathews' defense to liability under the Wasserman lease was that it was superseded by the Mathews lease to which she was not a party and which provided for monthly rent payments of $1,619.52. She made no claim that there was a third lease which superseded the Mathews lease. Although she made no contradictory statements to which the *Prophecy Corp.*, supra, rule could apply, her affidavit provides no response to uncontradicted evidence from Wasserman, James Mathews and the rent checks from 1987 to 1991, showing that monthly rent was paid by the lessees to Wasserman in amounts in accordance with the terms of the Wasserman lease.

Wasserman had the burden as the movant for summary judgment to show that there was no genuine issue of material fact for trial. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). He established a prima facie right to judgment as a matter of law by producing sufficient evidence of the Wasserman lease signed by Nancy

Mathews as a lessee. The burden then shifted to Nancy Mathews to establish an affirmative defense to the claim. *Keene v. Herstam*, 225 Ga. App. 115, 116 (483 SE2d 335) (1997). Her conclusory affidavit asserting that the Wasserman lease was voided and the Mathews lease controls is unsupported by substantiating fact or circumstances and flies in the face of uncontradicted evidence that the parties leased the premises under the terms of the Wasserman lease. "[A]n affidavit which is conclusory and is unsupported by substantiating fact or circumstances is insufficient to raise a genuine issue of material fact." Id. at 117. "[I]n response to a summary judgment motion, the non-movant may not rest on generalized allegations, but must come forward with specific facts to show that there is a genuine issue for trial." *Richard Haney Ford, Inc. v. Ford Dealer Computer Svcs.*, 218 Ga. App. 315, 319 (2) (a) (461 SE2d 282) (1995).

Nancy Mathews has failed to carry her burden in response to the evidence produced to show that there was a genuine issue of fact for trial. Accordingly, the trial court correctly granted summary judgment to the extent it found that Nancy Mathews was a lessee under the Wasserman lease.

3. There being no argument on appeal that the trial court erred in accepting Wasserman's calculation of the amount due under the terms of the Wasserman lease, we also find the trial court correctly granted summary judgment in the amount of $55,571.70 against Southeast and James Mathews and Nancy Mathews.

4. James and Nancy Mathews and Southeast further contend that the trial court erred by granting summary judgment on their counterclaims against Wasserman in which they alleged that Wasserman defrauded them and breached the lease agreement by failing to make all the payments for improvements to the premises due under the lease.

We agree with the trial court that there is an absence of any evidence to support a fraud counterclaim against Wasserman. The trial court correctly granted summary judgment in favor of Wasserman on the counterclaims for fraud.

As to the counterclaims that Wasserman failed to make all the payments due for improvements to the premises, we again agree with the trial court that even if not all the improvements were paid for by Wasserman, the lessees have failed to show how they were damaged. It is undisputed that the lessees took possession of the premises, and there is no claim that they were delayed by any failure to make improvements. Having taken possession of the premises, the Wasserman lease provides that "[b]y taking possession thereof, Lessee shall be deemed to have accepted the Premises in their present condition and as suited for use by Lessee." Moreover, even if there had been a failure to timely complete improvements, the lease

further provides that "Lessor shall waive the payment of any rental until Lessor delivers possession to Lessee and Lessee hereby waives any claim for damages due to Lessor's failure to so deliver the Premises."

The trial court properly granted summary judgment to Wasserman as to these counterclaims.

*Judgment affirmed. Birdsong, P. J., and Ruffin, J., concur.*

DECIDED OCTOBER 8, 1997 —
RECONSIDERATION DENIED OCTOBER 22, 1997 —

*William E. Hicks, Robert M. Gardner, Jr.,* for appellants.
*Friedman & Montalto, Jill A. Barker,* for appellee.