## A04A1876. GLIMCHER PROPERTIES, L.P. v. BI-LO, LLC.
### (609 SE2d 707)

MILLER, Judge.

Bi-Lo, LLC (Bi-Lo), entered a lease to operate a grocery store in a shopping center owned by Glimcher Properties, L.P. (Glimcher).[1] Bi-Lo sued Glimcher for breach of contract and unjust enrichment, alleging that Glimcher failed to protect Bi-Lo's exclusive right under the lease to sell groceries by allowing a Wal-Mart in the same shopping center to sell groceries as well. Glimcher claimed that Bi-Lo had waived its rights under the lease to be the exclusive seller of groceries in the shopping center. Both parties moved for summary judgment. The court found that Bi-Lo had not waived its rights under the lease and granted it summary judgment on the issue of liability. The court accordingly denied Glimcher's motion for summary judgment. For the reasons that follow, we hold that the trial court properly determined that Bi-Lo had not waived its rights under the lease, but erred in concluding that Bi-Lo was entitled to summary judgment on the issue of liability. We therefore affirm the denial of summary judgment to Glimcher, but reverse the grant of summary judgment to Bi-Lo.

On appeal from the grant or denial of a motion for summary judgment, we conduct a de novo review of the law and evidence, viewing the evidence in the light most favorable to the nonmovant, to determine whether a genuine issue of material fact exists and whether the moving party was entitled to judgment as a matter of law. *Holbrook v. Stansell*, 254 Ga. App. 553, 553-554 (562 SE2d 731) (2002).

[1] Bi-Lo originally entered the lease agreement in 1987 with Dayton & Associates XVI as the shopping center owner. The shopping center has been owned by several other entities since that time, with Glimcher becoming the lessor and owner of the center for the time period relevant to this appeal.

So viewed, the evidence reveals that the lease agreement between Bi-Lo and Glimcher contains a provision that allows Bi-Lo to be the exclusive seller of groceries in Glimcher's shopping center (the "food exclusive provision"):

[Glimcher] covenants and agrees that no store(s) and/or building(s), or any part of same, now or hereafter acquired and/or constructed by [Glimcher] within the [Shopping] Center or upon any property adjoining the [Shopping] Center in which [Glimcher] has ownership interest, directly or indirectly, and either legal or equitable, or a possessory right or interest, shall be used for the sale of health foods, delicatessen items, groceries, meat and/or other *items generally sold by supermarkets,* (except standard drug items generally sold in drug stores) and no delicatessen and/or delicatessen department shall be operated in the [Shopping] Center except and unless [Bi-Lo] gives its prior written consent thereto. Sales by any restaurant of prepared, ready-to-eat food items, either for consumption on or off the premises, shall not be deemed a violation of these covenants.

(Emphasis supplied.)

The lease also contains a "No Waiver" provision at paragraph 36:

No failure of either party hereto to exercise any power given unto each party hereunder or to insist upon strict compliance by the other party with any obligation of the other party hereunder, shall constitute a waiver of the rights of such party to insist upon strict compliance with the terms of this Lease in any other instance.

The parties further agreed that the lease constituted "the entire and only agreement between the parties, and no oral statements or representations, or prior written matter not contained in [the lease], shall have any force and effect." The lease could not "be modified or amended in any way except by a writing executed by both parties."

In 1988, a Wal-Mart store opened in Glimcher's shopping center. At that time, the Wal-Mart sold items including bagged candy, chips, and beverages. Sam's Club also opened a store in the shopping center in 1989, selling dry goods as well as fresh and frozen foods from refrigerated cooler units. By 1996, Wal-Mart began selling canned goods and coffee, and Sam's Club added a butcher shop and a produce department. That same year, Bi-Lo signed a letter as part of a lease renewal representing that Bi-Lo was not aware of any current or potential default occurring under the lease.

In early 2002, Wal-Mart added an aisle of refrigerated cooler units to its store. Bi-Lo then sent a letter to Glimcher dated February 20, 2002, in which it stated that Wal-Mart was violating the food exclusive provision of Bi-Lo's lease by adding these cooler units. Bi-Lo requested that Glimcher take necessary action under the lease to prevent Wal-Mart from interfering with the food exclusive provision. Glimcher took no action against Wal-Mart, and Bi-Lo filed suit on June 11, 2002.

Bi-Lo moved for summary judgment on the issue of liability, and Glimcher moved for summary judgment as well, arguing that Bi-Lo had waived its right to enforce the food exclusive provision of the lease. The trial court granted summary judgment to Bi-Lo on the issue of liability, reasoning that Bi-Lo had not waived its rights under the contract and that Glimcher's failure to enforce the food exclusive provision after Wal-Mart added cooler units constituted a breach of the lease. Since the court determined that Bi-Lo had not waived its rights under the lease, and since all of Glimcher's arguments in support of its motion for summary judgment were based on a waiver theory, the trial court accordingly denied Glimcher's motion for summary judgment. Glimcher appeals.

1. Glimcher argues that the evidence shows that Bi-Lo waived its rights to enforce the food exclusive provision of the lease, or at least that issues of fact remain as to Glimcher's potential liability for allegedly breaching the lease. While we disagree that the evidence shows any waiver by Bi-Lo, we agree that issues of fact remain regarding Glimcher's liability under the food exclusive provision of the lease.

Here, the evidence shows that the lease contained a valid "No Waiver" provision, providing that Bi-Lo's failure to exercise any power given to it under the lease or to insist upon strict compliance with the lease terms in a given instance did not waive Bi-Lo's right to insist upon strict compliance with the terms of the lease at a later time. See, e.g., *American Car Rentals v. Walden Leasing*, 220 Ga. App. 314, 316 (1) (a) (469 SE2d 431) (1996) ("no waiver" clause can protect contracting party from any failure to insist on the performance of any term or condition). Nor was there evidence that the parties agreed in writing to modify the terms of the contract.

Moreover, although parties may modify a written agreement through their conduct, even when the contract itself contains a merger clause or a "No Waiver" provision (see *Smith v. Gen. Finance Corp. &c.*, 243 Ga. 500, 501 (255 SE2d 14) (1979); *American Car Rentals*, supra, 220 Ga. App. at 316 (1)), no such modification occurred here. The evidence shows that prior to 2002, Wal-Mart sold snack items such as chips, bagged candy, beverages, coffee, and

canned goods, and not the "health foods, delicatessen items, groceries, meat and/or other items generally sold by supermarkets" that only Bi-Lo could sell under the food exclusive provision. Indeed, the agreement did not prohibit the sale of *all* food and snack items by stores in the shopping center other than Bi-Lo, but only the sale of meats and other such groceries "generally sold by supermarkets." When Wal-Mart began expanding its operations in early 2002 to include cooler units that could store grocery items, Bi-Lo acted promptly, demanding that Glimcher enforce the food exclusive provision of the lease. Since Wal-Mart's actions prior to 2002 did not implicate the food exclusive provision, and since Bi-Lo acted promptly to have the provision enforced, there was no waiver here.[2]

Even though there was no waiver, however, that does not mean that Bi-Lo was entitled to summary judgment on liability. Although the evidence reveals that Wal-Mart installed cooler units to expand the range of food items that it could sell, a jury must decide whether such expansion, considered alone, would implicate the lease prohibition on groceries being sold by entities other than Bi-Lo. On the one hand, a jury could conclude from the evidence that the existence of the cooler units indicates that Wal-Mart was selling "groceries, meat and/or other items generally sold by supermarkets." On the other hand, the jury could determine that the mere existence of the cooler units, without additional evidence of what in fact they were being used for, was insufficient to trigger Bi-Lo's rights under the food exclusive provision. When "the trial court is presented with a choice of inferences to be drawn from the facts[,] all inferences of fact from the proofs proffered must be drawn against the movant and in favor of the party opposing the motion." (Citation and punctuation omitted.) *Rider v. Albea*, 175 Ga. App. 53 (332 SE2d 168) (1985). Thus, given the choice of inferences here, Bi-Lo was not entitled to summary judgment on the issue of Glimcher's liability. See *Randy Ford, Inc. v. Martin*, 146 Ga. App. 335, 337 (2) (246 SE2d 389) (1978). We therefore reverse the trial court's grant of partial summary judgment to Bi-Lo.

2. Since all of Glimcher's summary judgment arguments are based on the theory that Bi-Lo waived its rights to enforce the food exclusive provision, and since we held in Division 1 that Bi-Lo did not

---

[2] We are unpersuaded by Glimcher's argument that Bi-Lo waived its right to have the food exclusive provision enforced with respect to Wal-Mart by failing to demand action against Sam's Club for its grocery sales. Sam's Club is a separate tenant in the shopping center, and any rights that Bi-Lo may or may not have waived with respect to Sam's Club have nothing to do with Bi-Lo's right to have the food exclusive provision enforced with respect to Wal-Mart. Whether Bi-Lo has waived its right to have the food exclusive provision enforced against Sam's Club is not a question that is properly before us. Moreover, the "No Waiver" provision of the contract expressly provides that Bi-Lo's failure to have the food exclusive provision enforced in one instance does not waive Bi-Lo's right to enforce it in another.

waive its rights to have the provision enforced, Glimcher was not entitled to summary judgment. We therefore affirm that portion of the trial court's order denying summary judgment to Glimcher.

*Judgment affirmed in part and reversed in part. Andrews, P. J., and Ellington, J., concur.*

DECIDED JANUARY 21, 2005.

*Hull, Towill, Norman, Barrett & Salley, David E. Hudson*, for appellant.

*Tucker, Everitt, Long, Brewton & Lanier, Thomas W. Tucker*, for appellee.