A07A0835. RANWAL PROPERTIES, LLC v. JOHN H. HARLAND COMPANY.
(646 SE2d 730)

ANDREWS, Presiding Judge.

This appeal arises from John H. Harland Company's ten-year lease of a warehouse from the predecessor-in-interest of Ranwal Properties, LLC. Before Harland took occupancy, Ranwal's predecessor made improvements to the warehouse, including the construction of offices in it. Near the end of the lease term, Ranwal asked Harland to remove many of the interior improvements and also submitted invoices for insurance premiums it had paid over the life of the lease. Harland refused, and this suit followed. We affirm the trial court's grant of summary judgment to Harland on the question of improvements, reverse the denial of summary judgment to Ranwal on insurance premiums, and remand for further proceedings on attorney fees due under the lease.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c)." *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997). A defendant moving for summary judgment may put forth evidence to show that there is no issue of fact as to one or more elements of the plaintiff's causes of action or

---

demonstrate that the record lacks sufficient evidence to support one or more of the plaintiff's causes of action. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). We review the grant or denial of summary judgment de novo, construing the evidence in favor of the nonmovant. *Matjoulis*, supra.

So viewed, the record shows that in August 1995, Harland and Ranwal's predecessor-in-interest, Rockdale Industries, Inc., agreed to lease a 60,000 square-foot industrial warehouse in Conyers to Harland for use in Harland's check-printing business for a period of ten years. Paragraph 9 of the parties' "Standard Industrial Lease Agreement" provided as follows:

> [Harland] agrees to return the Premises to [Rockdale] at the expiration or prior termination of this Lease broom clean and in the same condition and repair as when first received, natural wear and tear . . . excepted. Upon [Rockdale]'s request, [Harland] agrees to remove any alterations installed by or for [Harland] after the commencement of the term of this Lease and any improvements which [Rockdale] determines are special purpose improvements which are not likely to be usable by a successor tenant.

The form lease also provided that Rockdale "will carry, at [Harland]'s expense, all risk insurance coverage on the Premises in an amount deemed appropriate by [Rockdale]," and that "[Harland] shall pay to [Rockdale], as additional rent, the amount of [Rockdale]'s premium within thirty (30) days of demand from [Rockdale]." A specially drafted additional provision, Paragraph 30, specified that Rockdale "shall make improvements to the Premises . . . in accordance with the terms of Exhibit D attached hereto," including a parking lot, 22,500 square feet of office space, a "wall between plant and offices," "lighting to Harland requirements," a sprinkler system, electrical service, dock doors, and a concrete slab, as well as plumbing and HVAC.

On November 17, 1995, Rockdale sold the property to Ranwal. On November 25, Harland took occupancy of the warehouse and Ranwal formally assumed Rockdale's obligations under the lease. On the same day, the parties signed an amendment providing that "[t]he Premises shall be used in [Harland]'s business of printing checks and for activities which are directly related and ancillary to such activity," and that the lease's ten-year term would expire on November 30, 2005.

Harland moved out in July 2004. An agent of Ranwal contacted the Harland employee left in charge of maintaining the property, and the two men conducted a walk-through in August 2004. In the year or so following the walk-through, Ranwal asked Harland to make a

number of repairs, including the removal of all offices as well as some sprinklers and plumbing. Harland repaired some exterior features and removed interior lighting, humidifiers, and other items, but refused to remove what it considered "ordinary improvements" such as plumbing, HVAC equipment, and internal walls. Harland made all its monthly payments through the end of the lease. On July 20, 2005, Ranwal demanded $9,672 in insurance premiums necessitated by Harland's early vacation of the property; on October 6, it demanded an additional $83,523.52 for risk insurance premiums it had paid. When Harland also refused to pay these amounts, Ranwal sued for money due and attorney fees.

The trial court granted Harland summary judgment on Ranwal's improvement claim. It also granted Harland partial summary judgment on the insurance premium claim, reasoning that a question of fact remained as to the parties' intent to depart from the contract concerning the repayment of those premiums, but that Ranwal was time-barred from recovering premiums paid before October 1999. The trial court also ruled that neither party would receive fees.

1. Ranwal first argues that the trial court erred when it granted Harland summary judgment on the issue of improvements. We disagree.

It is undisputed that Rockdale made the improvements at issue *before* Harland took occupancy of the property, and that Harland was responsible for returning the property "in the same condition . . . as when first received." Moreover, Paragraph 16 of the lease specifies that "*in no event* shall [Harland] remove heating, ventilating, air conditioning, plumbing, electrical and lighting systems and fixtures or dock levelers" (emphasis supplied) — thus barring the removal of some of the very equipment Ranwal later demanded be removed.

Most important, Ranwal has failed to produce any specific facts in support of its claim that no other tenant could use the features installed for Harland at the outset of the lease. It is insufficient merely to state, as one Ranwal employee does, that he and a real estate agent "attempted to lease the Premises" and "spoke to various potential tenants" before concluding that the improvements were "unlikely to be usable by potential future tenants." See *Southeast Reducing Co. v. Wasserman*, 229 Ga. App. 1, 4 (2) (493 SE2d 201) (1997) (affidavit unsupported by substantiating fact or circumstances is insufficient to raise a genuine issue of material fact). When the lease spoke of a "likelihood" of usefulness, it subjected Ranwal's judgment concerning that quality to a standard of reasonableness. See *Sun Ins. Svcs. v. 260 Peachtree Street, Inc.*, 192 Ga. App. 482, 482-483 (2) (385 SE2d 127) (1989) (where tenant is required to make repairs of sufficient quality, landlord cannot unreasonably withhold consent for them). Without facts showing that the improvements

were not likely to be usable by a successor tenant, we will not construe one provision of the lease so as to defeat the plain import of its other provisions. See OCGA § 13-2-2 (4) (a "construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part").

2. Ranwal also argues that the trial court erred when it denied Ranwal's motion for summary judgment concerning the insurance reimbursement claim. We agree.

In addition to its provision that Harland "shall pay . . . as additional rent, the amount of [Ranwal]'s premium within thirty (30) days of demand from [Ranwal]," the lease also included a nonwaiver provision that "[n]o failure of [Ranwal] to exercise any power given [Ranwal] hereunder, . . . and no custom or practice of the parties at variance with the terms hereof[,] shall constitute a waiver of [Ranwal]'s right to demand exact compliance with the terms hereof." It is well settled that nonwaiver clauses such as this are enforceable in Georgia. See *Glimcher Properties v. Bi-Lo*, 271 Ga. App. 322, 324-325 (1) (609 SE2d 707) (2005).

"[W]here a debt is not at once due and no time is specified for its payment, it is due and payable in a reasonable time or upon demand subsequently made and the statute of limitations does not begin to run until after demand." (Citation and punctuation omitted.) *Scarboro v. Ralston Purina Co.*, 160 Ga. App. 576, 578 (287 SE2d 623) (1981). Here, Ranwal made its demand within the period of the lease, which gives no indication that the demand had to be made at any particular time.

> [W]here the money is loaned, payable on demand, there is no rule of law that prevents an express or implied agreement between the parties that their arrangement should continue into the future for a considerable length of time before the [lender] would be expected to demand his money, even though such contemplated demand may be made beyond the statutory period for bringing such an action.

(Punctuation omitted.) Id., quoting *Smith v. Early*, 60 Ga. App. 506, 511 (3 SE2d 913) (1939). Because Ranwal's delay in making the demand for the insurance payments did not violate or vary any term in the lease, and because the demand was made during the lease term, we cannot agree that both parties may have intended to "depart" from the lease's terms on this subject. See *Glimcher*, supra (no modification to contract where parties' acts did not implicate the relevant provision). We therefore conclude that the trial court erred when it granted partial summary judgment to Harland and denied

summary judgment to Ranwal on this issue. See *Smith*, supra (overruling defendants' demurrer where plaintiff alleged that a delay in payment was contemplated by the contract); *Scarboro*, supra (reversing a grant of summary judgment to borrower where borrower did not object to entry on its books showing that interest on money owed was continuing to accrue).

3. Finally, Ranwal argues that it is entitled to recover attorney fees under the lease, which provides that

> [e]xcept for damage caused solely by [Ranwal]'s negligence, [Harland] agrees to indemnify . . . [Ranwal] [for] all claims, losses, liabilities, costs and expenses (including attorney's fees and costs of litigation) suffered by [Ranwal] by reason of the use or occupancy of the Premises by [Harland].

There is no special pleading requirement for the enforcement of such provisions, which are enforceable under Georgia law. See OCGA § 13-1-11 (a) (obligation to pay attorney fees upon "any note or other evidence of indebtedness" is valid and enforceable); *Holmes v. Bogino*, 219 Ga. App. 858, 859 (2) (467 SE2d 197) (1996) (a lease is "evidence of indebtedness" within the meaning of OCGA § 13-1-11); compare OCGA § 13-6-11 (requiring that prayer for attorney fees in contract cases be specially pled).

Here, Ranwal has prevailed only on its claim concerning insurance costs. We therefore remand the case for further proceedings on the amount of reasonable fees Ranwal may recover. See *Interfinancial Midtown v. Choate Constr. Co.*, 284 Ga. App. 747, 751 (3) (a) (644 SE2d 281) (2007).

*Judgment affirmed in part and reversed in part, and case remanded with direction. Ellington and Adams, JJ., concur.*

DECIDED MAY 24, 2007.

*Spell, Pless, Davis & Saurol, LeRoy P. Spell, Jr.*, for appellant.
*King & Spalding, Daniel J. King, Brian A. White*, for appellee.